IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PABLO PATTERSON, ) ) Plaintiff(s), ) ) vs. ) ) M. REYNOLDS, ) ) Defendant(s). ) ) | No. C 04-2808 CRB (PR) ORDER GRANTING REYNOLDS' MOTION FOR SUMMARY JUDGMENT (Doc # 18) |

James Pablo Patterson, a prisoner at California State Prison, Solano, filed the instant pro se civil rights action for damages under 42 U.S.C. § 1983 alleging use of excessive force during arrest. In his First Amended Complaint ("FAC"), Patterson specifically alleges that on October 21, 2003, City of Alameda police officer M. Reynolds used excessive force when Reynolds continued to hit Patterson with his baton after Patterson had surrendered and been handcuffed.

Per order filed on April 13, 2005, the court found that Patterson's allegations stated a cognizable claim under § 1983, when liberally construed, and ordered the United States Marshal to serve Reynolds. Reynolds now moves for summary judgment on the ground that there are no material facts in dispute and that he is entitled to judgment as a matter of law. Patterson did not file an opposition despite being advised that failure to do so may result in judgment being entered against him.

**DISCUSSION**

A. <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. <u>Id.</u>

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u>

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." <u>Celotex Corp.</u>, 477 U.S. at 323.

B. <u>Analysis</u>

Reynolds argues that he is entitled to summary judgment because the undisputed facts show that his actions were objectively reasonable under the

2

circumstances. In support, Reynolds submits declarations and documentary evidence showing the following:

On October 21, 2003, City of Alameda police dispatch directed officer Matthew McMullen to investigate a reported battery at 3264 Encinal Avenue. At that address, Nathan Grimes reported that he was struck by Patterson, who had since fled the scene. Grimes indicated that he did not wish to press charges, but advised McMullen that Patterson seemed abnormally aggressive and agitated. Having had contact with Patterson in the past, McMullen, accompanied by Reynolds, attempted to make contact with Patterson at his home, 3284 Encinal Avenue. Patterson's brother informed the officers that Patterson was not home.

Approximately one hour later, Alameda police dispatch directed McMullen and officer Agosta to investigate a 911 hang up from 3284 Encinal Avenue. Reynolds heard the dispatch and recognized the address from earlier that evening and, along with sergeant Joseph McNiff, also responded to the dispatch. By the time the officers arrived at Patterson's home, Patterson was leaving the scene on a bicycle.

McMullen observed that Patterson was driving his bicycle at night without a front light and attempted to initiate a traffic stop. (He was also aware that Patterson had not yet been contacted regarding the earlier battery report and 911 hang up call from his home.) McMullen activated the emergency lights on his patrol car and used his siren to direct Patterson to stop. Patterson did not respond. At that point, McNiff attempted to block Patterson and directed him to stop. Patterson instead crossed over a grassy knoll on Encinal Avenue and continued eastbound away from the officers.

Reynolds observed the pursuit from his position behind McMullen's patrol car and followed McMullen as McMullen pursued Patterson northbound onto

3

Fernside Boulevard.  Throughout this period, Reynolds heard McMullen's siren and verbal commands to Patterson to stop.  As Patterson reached Briggs Avenue, he jumped off his bicycle and ran towards Reynolds, who exited his vehicle and immediately ordered Patterson to stop running and get on the ground.  Reynolds ran towards Patterson and attempted to grab him, but could not.  Reynolds continued to attempt to gain Patterson's compliance by issuing verbal commands.  He then observed Patterson take a fighting stance with his fists raised.  Reynolds withdrew his expandable ASP baton and extended it while continuing to command Patterson to get down.  McMullen was also shouting commands to Patterson to stop and get on the ground.  After Patterson repeatedly ignored these commands, Reynolds moved in and struck Patterson on the lower portion of his left leg with his baton.  Patterson did not appear phased by the strike and took off running east on Briggs Avenue.

       The officers pursued Patterson until Patterson again took a fighting stance in front of 3288 Briggs Avenue.  After again ordering Patterson to the ground without his compliance, Reynolds again struck Patterson with his baton on the lower portion of his left leg.  Patterson then swung his clenched fist at Reynolds, but Reynolds was able to move out of the way so that the blow only grazed Reynolds' right shoulder.  This nonetheless caused Reynolds to lose his balance and fall against a parked car behind him.  Moments later, McMullen used his pepper spray on Patterson, but this had no immediate effect on Patterson either.  McNiff then struck Patterson two times in the right leg with his baton.  Patterson fell to the ground, but refused to roll over on his stomach as directed.  McNiff therefore struck Patterson one more time in his lower right leg.  Patterson rolled over as directed and McMullen and Agosta placed him in handcuffs.  The officers then used a garden hose to wash pepper spray from Patterson's eyes.

Reynolds drove Patterson to Alameda Hospital's Emergency Care Clinic and took pictures of Patterson's injuries while he was at the clinic. Patterson was treated by Dr. Leif Johnson. Johnson's report notes scrapes and bruising to Patterson's left chest and both leg and arms. It also notes that there is no evidence of scalp swelling or tenderness, and that Patterson appears alert and in no distress. A blood test taken from Patterson while at the clinic showed a 0.17 blood alcohol level. Patterson was released from the clinic and "booked."

Under the Fourth Amendment, officers may only use such force as is "objectively reasonable" under the circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989). To determine whether the force used was reasonable, courts balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Id. at 396. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id. An excessive force analysis requires evaluating "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

In addition, the court's consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. Id. at 396.

Under the circumstances described by the facts set forth by Reynolds, Reynolds' use of force in the course of helping the other officers restrain and

arrest/detain Patterson was objectively reasonable. Patterson was resisting arrest/ detention and attempting to flee. In his efforts to do so, he ignored repeated verbal commands to stop and get on the ground, threatened to engage in a fist fight with the officers and even threw a punch at Reynolds. Under these circumstances, Reynolds' use of force to help the other officers get Patterson to the ground and restrain him was lawful. Reynolds' admission that he struck Patterson with his baton in an attempt to subdue him does not compel a different conclusion. See, e.g., Saman v. Robbins, 173 F.3d 1150, 1155-57 (9th Cir. 1999) (finding officer's split-second judgment to administer a single kick to subdue plaintiff in tense, uncertain and dangerous situation in which one officer had already been shot objectively reasonable as a matter of law). The burden lies with Patterson to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). He does not.[1]

The only facts Patterson has set forth are the brief allegations in his unverified FAC. There, he simply alleges that Reynolds used excessive force during the course of his arrest because Reynolds struck the back of his head and neck with the baton after he had been handcuffed. These unsworn and largely conclusory allegations are insufficient to defeat Reynolds' motion for summary judgment. They do nothing to put Reynolds' version of the facts into question and show that there is a genuine issue for trial on Patterson's claim against Yaeger.

---

[1] Plaintiff was advised pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), that to prevent summary judgment in favor of defendants he "must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial." Apr. 13, 2005 Order at 3-4 (quoting Rand, 154 F.3d at 962-63 (App. A)). "If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you." Id. at 4.

See Arpin v. Santa Clara Valley Trans. Agency, 261 F.3d 912, 922 (9th Cir. 2001) (unsworn and conclusory allegations of excessive force during arrest insufficient to defeat defense motion for summary judgment). This conclusion is further supported by the fact that Patterson has set forth no medical evidence in support of his claim of injury from blows to the back of his head and neck. Cf. id. (claim of injury cannot survive summary judgment where plaintiff provides no medical records to support claim that she was injured as a result of being handcuffed). The medical evidence in the record in fact shows that Patterson suffered no injury to the head or neck. Reynolds is entitled to summary judgment as a matter of law because Patterson has not set forth any evidence showing that the there is a genuine issue for trial on his Fourth Amendment claim against Reynolds. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986); Arpin, 261 F.3d at 922.

## CONCLUSION

For the foregoing reasons, Reynolds' motion for summary judgment (doc # 18) is GRANTED.

The cerk shall enter judgment in favor of Reynolds and close the file.

SO ORDERED.

DATED:  Jan. 3, 2006  

CHARLES R. BREYER
United States District Judge